In re the Marriage of Louwanna BLOOM
and Benton E. Bloom.

Louwanna BLOOM, Appellant,

v.

Benton E. BLOOM, Respondent.

No. 20374.

Missouri Court of Appeals,
Southern District,
Division Two.

July 2, 1996.

Kenneth W. Johnson, Springfield, for appellant.

Donald L. Sanders, Springfield, for respondent.

CROW, Judge.

On June 30, 1987, the trial court entered a decree dissolving the marriage of Louwanna Bloom and Benton E. Bloom. The decree granted Louwanna[1] primary physical custody of the parties' three children, identified in the decree as: Amber Michelle Bloom, born August 18, 1978; Nicholas Ryan Bloom, born July 13, 1981; Benjamin Michael Bloom, born June 21, 1984. The decree ordered Benton to pay Louwanna child support of $250 per month per child, but allowed him an "abatement" of one month's child support each year in which he exercised "the six weeks visitation" granted him in the decree.

On November 13, 1992, the trial court entered an order increasing the child support to $257.95 per month per child beginning "January, 1993," without any abatement.

On November 9, 1993, Louwanna commenced the battle that resulted in the present appeal by filing a motion to modify the 1992 order. Benton filed a "cross motion to modify" on March 16, 1994.

A family court commissioner[2] conducted a hearing January 24, 1995. At the outset, Louwanna dismissed her motion to modify, without prejudice. Trial ensued on Benton's motion.

On June 30, 1995, the commissioner signed and filed a "Judgment and Decree." For convenience, and without attributing any specific legal connotation to that instrument, we henceforth refer to it as a "decree."

The decree reduced the child support payable by Benton to Louwanna to $199.16 per month per child, retroactive to April 1, 1994. The decree provided that during Benton's "summer custody" of the children, child support "shall abate by the sum of $597.48." The decree included a finding that at the time of trial, Benton "was current in the payment of child support due under the [1992] Order." The decree also ordered Louwanna to pay Benton $750 as attorney fees and resolved other issues raised by Benton.

Louwanna brings this appeal from the decree described in the preceding paragraph.

Although neither party questions the appealability of the decree, we must do so because if the decree is unappealable we must dismiss the appeal. *In re Marriage of McMillin*, 908 S.W.2d 860, 862–63[4–6] (Mo. App. S.D.1995).

The appealability question arises from events that occurred after the commissioner entered the decree of June 30, 1995.

On July 14, 1995, Louwanna filed a "Motion for Reconsideration by Commissioner or, in the Alternative, Motion for Hearing by Judge of Family Court." The motion cited § 487.030.[3]

The docket sheet shows that the commissioner denied Louwanna's "Motion for Reconsideration by Commissioner" on July 18, 1995, and submitted the "File and Findings"

---

1. For brevity and clarity, we refer to the people mentioned in this opinion by their respective forenames. We mean no disrespect.

2. Chapter 487, RSMo 1994, as amended.

3. On July 14, 1995, the version of § 487.030 in RSMo 1994 was in effect. It reads, in pertinent part:

"1. Upon the conclusion of the hearing ... the commissioner shall transmit to the judge all papers relating to the case, together with his findings and recommendations in writing. Notice of the findings of the commissioner ... shall be given to the parties...."

2. The parties to a cause of action heard by a commissioner are entitled to file with the court a motion for a hearing by a judge of the family court within fifteen days after receiving notice of the findings of the commissioner.... The judge shall promptly rule on such motion and, in his discretion, may either sustain or deny the motion, and if the motion is sustained, the judge shall set a date for a hearing. If the motion is denied, or if no such motion is filed, the findings and recommendations of the commissioner shall become the decree of the court *when adopted and confirmed by an order of the judge. ...*" (Emphasis added.)

to the family court judge. The next relevant event appears on the docket sheet thus:

> "07/20/95 Petr's Motion for Hearing by Family Court Judge denied. TKM/ms ...."

■ An earlier page of the docket sheet shows: "JUDGE: Thomas McGuire." We infer from the statement of facts in Louwanna's brief that "TKM" in the docket entry of July 20, 1995, identifies Judge McGuire, and that he was then the judge of the family court. Benton adopts Louwanna's statement of facts except in certain particulars immaterial here. Where a statement of fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appears in the record. *Woodard v. Director of Revenue*, 876 S.W.2d 810, 811[1] (Mo.App. S.D.1994). We therefore assume the ruling set forth in the entry of July 20, 1995, was made by the judge of the family court.

In *McMillin*, a family court commissioner entered a decree; thereafter, one party filed a timely motion for a hearing by the family court judge. 908 S.W.2d at 861. The family court judge never ruled on the motion and never entered an order specifically adopting and confirming the commissioner's decree. *Id.* at 862. This court held there was no "decree of the court" within the meaning of § 487.030.2, RSMo 1994,[4] in that the findings and recommendations of the commissioner had not been adopted and confirmed by an order of the family court judge. *Id.* at 862–63.

In the instant case, as we have seen, the family court judge, on July 20, 1995, denied Louwanna's motion for a hearing by him. However, the record is bare of any order by the family court judge adopting and confirming the commissioner's decree of June 30, 1995. Consequently, it appears *McMillin* compels dismissal of the instant appeal.

However, it is not that simple. By an act that took effect August 28, 1995, the General Assembly repealed § 487.030, RSMo 1994, and replaced it with a new statute, identically numbered. Laws of Missouri 1995, S.B. No. 174, pp. 976–89. The new § 487.030, now codified in RSMo Supp.1995, reads, in pertinent part:

> "1. . . . .
>
> 2. The parties to a cause of action heard by a commissioner are entitled to file with the court a motion for a hearing by a judge of the family court. . . . In cases which are not IV–D cases, if the motion is denied, or if no such motion is filed, the findings and recommendations of the commissioner shall become the decree of the court *upon denial of the motion* or, if no motion is filed, on the day after the last date for filing a motion for a rehearing. . . ." (Emphasis added.)

Had the new § 487.030.2 been in effect on July 20, 1995, when the family court judge denied Louwanna's motion for a hearing by him, the commissioner's decree of June 30, 1995, would have automatically become "the decree of the court." But, as explained above, the new § 487.030.2 did not take effect until August 28, 1995 (39 days after the July 20, 1995, denial). Accordingly, our task is to determine whether, on August 28, 1995, the new § 487.030.2 changed the effect of the July 20, 1995, order of the family court judge so that the commissioner's decree of June 30, 1995, became "the decree of the court" on August 28, 1995.

■ Statutory provisions that are substantive are generally presumed to operate prospectively unless the legislative intent that they be given retroactive operation clearly appears from the express language of the act or by necessary or unavoidable implication. *Callahan v. Cardinal Glennon Hospital*, 863 S.W.2d 852, 872[46] (Mo. banc 1993). On the other hand, a statutory provision that is remedial or procedural operates retrospectively unless the legislature expressly states otherwise. *Id.* A statute dealing with procedure only is applicable to all pending cases (cases not yet reduced to a final judgment). *Claspill v. Missouri Pacific Railroad Co.*, 793 S.W.2d 139, 140[1] (Mo. banc 1990), *cert. denied*, 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990).

4. Footnote 3, *supra.*

The cases cited in the preceding paragraph demonstrate that if the new § 487.030.2 deals with "procedure only," it applies in the instant case. That is because, as observed earlier, the commissioner's decree of June 30, 1995, was not a final judgment when the new § 487.030.2 took effect August 28, 1995. Under *Claspill,* 793 S.W.2d at 140[1], the instant case was a "pending case" on that date.

■ In determining whether the new § 487.030.2 is substantive or procedural, we find guidance in *Wilkes v. Missouri Highway and Transportation Commission,* 762 S.W.2d 27, 28[1] (Mo. banc 1988):

"Procedural law prescribes a method of enforcing rights or obtaining redress for their invasion; substantive law creates, defines and regulates rights; the distinction between substantive law and procedural law is that substantive law relates to the rights and duties giving rise to the cause of action, while procedural law is the machinery used for carrying on the suit."

■ In the instant case, both the former § 487.030.2 and the new § 487.030.2 create the "machinery" for transforming the findings and recommendations of a family court commissioner into "the decree of the court." Neither the former nor new section creates, defines or regulates any rights or duties giving rise to any cause of action. Both the former section and the new one merely specify the judicial act of a family court judge by which the findings and recommendations of a commissioner become the family court's decree.

Under the former section, that act is the entry of an order by a family court judge adopting and confirming the commissioner's findings and recommendations. Under the new section, that act is the denial by a family court judge of a motion by a party for a hearing by the judge (if such a motion is filed).

We therefore hold the new § 487.030.2 is procedural, not substantive. Accordingly, under *Claspill,* 793 S.W.2d at 140[1], the new § 487.030.2 applies in the instant case. As a result, when the new § 487.030.2 replaced the former section on August 28, 1995, the new section changed the effect of the July 20,

1995, order of the family court judge so that the commissioner's decree of June 30, 1995, became the family court's decree on August 28, 1995.

In so holding, we are mindful that under the new § 487.030.2, in cases which are not IV–D cases, if no party to an action heard by a commissioner files a timely motion for a hearing by a family court judge, the commissioner's findings and recommendations ostensibly become the family court's decree on the day after the last date for filing such a motion. Evidently, in such circumstances the new § 487.030.2 requires no judicial act by a family court judge. We henceforth refer to that procedure as "the no-judicial-act procedure."

Whether there is any constitutional infirmity in the no-judicial-act procedure is not an issue in the instant case. That is because the family court judge in the instant case performed the judicial act required by the new § 487.030.2 to transform the commissioner's findings and recommendations into the family court's decree. That act was the denial, on July 20, 1995, of Louwanna's motion for a hearing by the family court judge.

If, in the instant case, neither party had filed a timely motion for a hearing by the family court judge, the appealability issue we have addressed would have been even more difficult. That is because (a) the new § 487.030.2 would have purportedly transformed the commissioner's findings and conclusions into the family court's decree effective August 28, 1995 (the date the new § 487.030.2 took effect), and (b) the transformation would have occurred not because of any act by a family court judge, but simply because neither party filed a motion for a hearing by the judge within the time allowed for doing so. Whether a statute that purports to transform the findings and recommendations of a commissioner into a court decree when a deadline passes—without any act of a judge—is constitutional is a provocative question.

■ If that question existed in the instant case, it appears we would have had to transfer this appeal to the Supreme Court of Missouri, as that court has exclusive appel-

late jurisdiction in all cases involving the validity of a statute of this state. Mo. Const. Art. V, § 3 (1945, amended 1970, 1976 and 1982). However, § 1.140, RSMo 1994, reads:

"The provisions of every statute are severable. If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent."

Even if the no-judicial-act procedure in the new § 487.030.2 is unconstitutional—an issue we lack jurisdiction to decide—we find the remaining provisions of the statute are not so essentially and inseparably connected with, and so dependent upon, the no-judicial-act procedure that we cannot presume the General Assembly would have enacted the statute without it. *See: Whitaker v. City of Springfield,* 889 S.W.2d 869, 873–74[4] (Mo. App. S.D.1994), where this court engaged in a similar analysis under § 1.140 regarding a zoning statute. Furthermore, we find the remaining provisions of the new § 487.030.2, standing alone, are complete and are capable of being executed in accordance with the legislative intent.

Therefore, even if the no-judicial-act procedure in the new § 487.030.2 is constitutionally flawed, we hold the remaining provisions are severable under § 1.140, hence those provisions are unimpaired by any constitutional deficiency in the no-judicial-act procedure.

5. We wistfully observe that all of the effort required to resolve the appealability question would have been unnecessary had the family court judge simply entered the order required by § 487.030.2, RSMo 1994, when he denied Louwanna's motion for a hearing by him on July 20, 1995.

6. The version of Form 14 in effect when the commissioner heard the evidence on January 24, 1995, and when the commissioner's decree be-

The effect of all this is that the commissioner's decree in the instant case became the family court's decree on August 28, 1995. However, there is one more appealability problem. Louwanna filed her notice of appeal August 2, 1995. Obviously, it was premature.

Under Rule 81.05(b), Missouri Rules of Civil Procedure (1995), a premature notice of appeal shall be considered filed immediately after the time the judgment becomes final for the purpose of appeal. *Kilmer v. Browning,* 806 S.W.2d 75, 86 (Mo.App. S.D.1991). Accordingly, we have jurisdiction of this appeal.[5] *Id.*

The first of Louwanna's four points relied on asserts the commissioner erred in calculating Benton's presumed child support at $597.48 ($199.16 per month per child) on "Form 14 of Civil Rule 88."[6] The error, says Louwanna, occurred when the commissioner allowed Benton a "credit" on line 2.c of Form 14. The factual basis for the credit appears in Benton's testimony, *infra.*

In adopting Form 14,[7] the Supreme Court of Missouri simultaneously adopted "Directions for Completion of Form 14." The directions regarding line 2.c provide, in pertinent part:

"Enter the amount of financial responsibility a parent has for his ... children who are in the primary physical custody of that parent and who are not children involved in this action. Use of the adjustment is appropriate ... in a proceeding to modify an existing order. However, it may not be used in a modification proceeding by a moving party who petitions to increase or decrease an existing order of support for the ... children who are the subject of the proceeding...."

came the family court's decree on August 28, 1995, is the version that took effect April 1, 1994, per an order of the Supreme Court of Missouri, pages XXVII to XXXVII, Vol. 862–863 S.W.2d, Missouri Cases. References to Form 14 in this opinion are to that version except where otherwise indicated.

7. Footnote 6, *supra.*

At the hearing before the commissioner, Benton presented Exhibit B, a Form 14 prepared by his lawyer using Benton's 1993 income and Louwanna's "reported 1993 income." On line 2.c in the column "Non–Custodial Parent," Exhibit B shows $473.67. Benton's testimony explained the entry:

"Q [Y]ou ... have remarried since the divorce [from Louwanna], is that correct?

A That's correct.

Q And what is your wife's name?

A Pam.

Q And do you and Pam have a child by your marriage?

A Yes, we do.

Q What's her name?

A Her name is Brittney.

Q And how old is Brittney?

A She's six."

Benton recounted that the $473.67 on line 2.c of Exhibit B was calculated by his lawyer as "a credit for [Benton's] support of Brittney."

The commissioner found Exhibit B "accurately reflects the parties' incomes and is supported by the evidence." The commissioner further found:

"One child has been born to [Benton] and his wife and effective April 1, 1994, Form 14 is to be prepared adjusting [Benton's] gross income for the support obligation under the guidelines for this child. The adjustment to be entered on line 2c is the sum of $473.67. Accordingly, the presumed child support amount for the three children who are the subject of this Decree is the sum of $597.48."

Louwanna does not dispute the incomes attributed to Benton and her on Exhibit B, nor does she challenge the accuracy of the calculation on line 2.c. Her claim of error in point one is simply that Benton was the "moving party" in a "modification proceeding," hence he was entitled to no credit at all on line 2.c.

Louwanna's position is consistent with the Supreme Court's directions for line 2.c. The excerpt from those directions quoted earlier clearly states that the "adjustment" on line 2.c "may not be used in a modification proceeding by a moving party who petitions to increase or decrease an existing order of support for the ... children who are the subject of the proceeding."

Benton was undeniably the "moving party" in his "cross motion to modify" filed March 16, 1994.[8] That is the motion the commissioner heard January 24, 1995. As reported earlier, Louwanna dismissed her motion to modify at the outset of the hearing. Thus, not only was Benton a moving party; he was the only moving party.

Consequently, allowing Benton (the moving party) to claim the "adjustment" on line 2.c of Exhibit B (Form 14) was contrary to the Supreme Court's directions.

Benton does not argue otherwise. Instead, he maintains that the adoption of Form 14 and Rule 88.01[9] were not meant "to remove from the sound discretion of the [c]ourt the ability to determine an appropriate level of financial support of children." Citing *Vehlewald v. Vehlewald*, 853 S.W.2d 944 (Mo.App. E.D.1993), and *In re Marriage*

8. Although we find no definition of "moving party" in any rule or case, we find the following definition of "movant" in Black's Law Dictionary 1014 (6th ed. 1990): "One who moves; one who makes a motion before a court; the applicant for a rule or order." In his "cross motion to modify," Benton prayed for an order "modifying the child support obligation in accordance with Rule 88.01." In oral argument before us, Benton's lawyer conceded that Benton, in his cross motion to modify, was a moving party within the meaning of that term in the directions for line 2.c.

9. Rule 88.01, Missouri Rules of Civil Procedure (1996), took effect in its present form on April 1, 1990. It lists certain factors a court must con-

sider in determining the amount of child support. The rule also provides, in paragraph "(e)":

"There is a rebuttable presumption that the amount of child support calculated pursuant to ... Form No. 14 is the amount of child support to be awarded in any judicial ... proceeding for ... child support. It is sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to ... Form No. 14 is correct if the court ... enters in the case a written finding or a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate."

*of Zavadil,* 806 S.W.2d 506 (Mo.App. E.D. 1991), Benton insists: "[T]he guidelines were never meant to be automatically or rigidly enforced."

Neither case cited by Benton permits a trial court, in determining child support pursuant to Form 14, to ignore the Supreme Court's directions. The discretion to award child support in an amount other than the sum calculated pursuant to Form 14 is exercised only after the Form 14 amount is properly calculated in conformity with the Supreme Court's directions. Once that calculation is made, the trial court, after considering all relevant factors, has discretion under Rule 88.01(e)[10] to determine whether the amount so calculated is unjust or inappropriate. As explained in *In re Marriage of Douglas,* 870 S.W.2d 466, 470–71[8] (Mo. App. S.D.1994):

> "Rule 88.01 requires the use of … Form 14 in determining child support…. The terms of Rule 88.01 are mandatory, and courts must either award child support in conformity with the result obtained by using Form 14 or make a finding on the record that an award of such amount, after consideration of all relevant factors, is unjust or inappropriate."

*Accord: Division of Family Services v. A. J.,* 872 S.W.2d 594, 597[2] (Mo.App.E.D.1994); *Watkins v. Watkins,* 839 S.W.2d 745, 748[8] (Mo.App. W.D.1992).

In arguing that the commissioner did not err in allowing the "credit" on line 2.c of Exhibit B (Form 14), Benton points out that prior to April 1, 1994 (the date the current version of Form 14 took effect[11]), Form 14 "failed to acknowledge financial obligations a parent might have towards children of another marriage."

That declaration is misleadingly broad. Line 2.a of the version of Form 14 in effect before April 1, 1994,[12] allowed an "adjustment" for "[o]ther court or administratively ordered child support payments being made." That version did not, however, allow an "adjustment" like the one on line 2.c of the current Form 14.

Benton theorizes that in adopting the current Form 14, the "framers" recognized a parent could be responsible for supporting children from more than one marriage. Therefore, reasons Benton, in "modification proceedings" regarding a parent's support of children from a "first" marriage, the framers intended to allow such parent an adjustment on line 2.c for his duty to support a child of a "second" marriage when (a) such child is in such parent's primary physical custody, and (b) such child existed when the order to support the children of the "first" marriage was entered.

The flaw in Benton's argument is that the directions for line 2.c do not say what he assumes the "framers" intended. The directions clearly bar the adjustment on line 2.c in a modification proceeding by a moving party who seeks to increase or decrease an existing order of support for the children who are the subject of the proceeding. Had the "framers" intended the directions to be as Benton theorizes, they could have written the directions that way. They did not.

Applying the directions as written, we hold the commissioner erred in allowing the $473.67 adjustment on line 2.c of Exhibit B (Form 14). Deleting that adjustment, and using the other data on Exhibit B, we calculate Benton's presumed child support amount as $694.21 per month, in the aggregate, for the three children in this proceeding.

That leads us to Louwanna's second point. It avers the commissioner erred in changing the child support in that Benton's presumed child support amount, properly calculated, does not vary from the child support in the 1992 order by twenty percent. Consequently, argues Louwanna, Benton failed to make a prima facie case for modification.

Louwanna bases her second point on § 452.370, RSMo 1994, which reads, in pertinent part:

---

**10.** Footnote 9, *supra.*

**11.** Footnote 6, *supra.*

**12.** The pre-April 1, 1994, version of Form 14 took effect April 1, 1990, per an order of the Supreme Court of Missouri, pages XXIX to XXXVII, Vol. 773–775 S.W.2d, Missouri Cases.

"1. .... the provisions of any decree respecting ... support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable.... If the application of the guidelines and criteria set forth in supreme court rule 88.01 to the financial circumstances of the parties would result in a change of child support from the existing amount by twenty percent or more, then a prima facie showing has been made of a change of circumstances so substantial and continuing as to make the present terms unreasonable.

2. When the party seeking modification has met the burden of proof set forth in subsection 1 of this section, then the child support shall be determined in conformity with criteria set forth in supreme court rule 88.01."

The 1992 child support order amounts to $773.85 per month, in the aggregate, for the three children in this proceeding. As pointed out in the conclusion of our discussion of Louwanna's first point, Benton's presumed child support amount, properly calculated from the data on Exhibit B, is $694.21 per month, in the aggregate. The difference between those amounts is less than twenty percent of the 1992 amount. Accordingly, Benton failed to satisfy the requirements of § 452.370.1, above, for a prima facie showing of a change of circumstances so substantial and continuing as to make the 1992 order unreasonable.

However, that does not automatically foreclose Benton from a reduction in child support. It just deprives him of the advantage of the prima facie showing granted by § 452.370.1.

The commissioner made findings regarding changes in the parties' incomes between the 1992 order and the 1995 hearing. The change in Benton's income, as found by the commissioner, was that Benton's 1993 income was $31,943.04 instead of the $35,000 imputed to him by the 1992 order. The change in Louwanna's income, as found by the commissioner, was that her 1993 income was $14,360, some $3,986 more than the income imputed to her by the 1992 order. Louwanna

estimated her 1994 income would exceed 1993 by $1,000 to $1,500.

The commissioner further found: "There have been changed circumstances since the [1992] Order so substantial and continuing as to make its terms unreasonable as to child support." That finding yields no clue as to what those circumstances were, or how they made the 1992 order unreasonable.

The commissioner may have based the finding in the preceding paragraph on the belief that Benton had made a prima facie showing of changed circumstances under § 452.370.1. As we have seen, the commissioner found Benton's presumed child support amount, calculated per Exhibit B (Form 14) was $597.48. The difference between that amount and the $773.85 in the 1992 order is $176.37—a difference of more than twenty percent of the 1992 amount.

However, as demonstrated earlier, the commissioner incorrectly calculated Benton's presumed child support amount. Calculated correctly, the amount does not result in a prima facie showing of changed circumstances under § 452.370.1. Therefore, if the commissioner based his finding of changed circumstances on the notion that Benton made a prima facie showing under § 452.370.1, the commissioner erred as a matter of law.

Benton maintains that even if the commissioner based his finding of changed circumstances on the erroneous belief that Benton made a prima facie showing under § 452.370.1, the evidence is nonetheless sufficient to support a finding, independent of any prima facie showing, that there were changes in circumstances since the 1992 order which were so substantial and continuing that the 1992 order was unreasonable. Therefore, argues Benton, the commissioner's decree must be affirmed.

Benton cites two cases in support of that proposition. Neither supplies any authority for a holding by us that the evidence before the commissioner was sufficient to support a finding of changed circumstances so substantial and continuing as to make the 1992 order unreasonable.

Apart from the changes in the parties' incomes—less than nine percent for Benton—the only other financial change of any significance was in the income of Pam, Benton's wife. Benton testified Pam earned some $11,000 more in 1993 than 1992, but her income dropped in 1994.

Section 452.370.1 provides that in a proceeding for modification of child support, the court, in determining whether a substantial change in circumstances has occurred, shall consider all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse. Nothing in the commissioner's decree mentions that factor.

There was no evidence of any change in the health of Benton, Pam or Brittney since the 1992 order, and no evidence of any other significant change of circumstances. Furthermore, when Benton's presumed child support amount is properly calculated on Form 14, the difference between it and the amount in the 1992 order is $79.64. Percentage wise, the difference between the correctly-calculated amount and the 1992 amount is only ten percent—just half the difference required for a prima facie showing under § 452.370.1.

We therefore hold the evidence is insufficient to support a finding that there was a change of circumstances so substantial and continuing as to make the 1992 order unreasonable. The commissioner's modification of the 1992 order must be reversed.

However, there is one feature of the commissioner's decision about child support that warrants further attention. As we understand the decree, the commissioner intended to grant Benton an abatement of one month's child support (as calculated by the commissioner on Exhibit B) if Benton has actual physical custody of Amber, Nicholas and Benjamin during the eight weeks of "summer custody" granted by the decree.

Those eight weeks are an increase over the six weeks granted in the 1987 decree (which remained unaffected by the 1992 order). The commissioner granted the additional time because Louwanna had changed residence from Springfield to Lake Ozark. Benton still resides in Springfield.

Paragraph "D" of the Comments for Use of Form 14 provides that an adjustment to the presumed child support amount may be appropriate when children spend substantial time with both parents. That provision suggests Rule 88.01(e) [13] may allow a court to find that where, as here, children spend a substantial period of time in "summer custody" of the non-custodial parent, it would be unjust or inappropriate to require the non-custodial parent to pay child support all twelve months of the year.[14] However, we espy nothing in the decree indicating the commissioner made such a finding before endeavoring to grant Benton the abatement.

Benton may, in the future, desire to ask the family court to consider whether it is unjust or inappropriate (in view of Benton's increased amount of "summer custody") to require him to pay the child support in the 1992 order all twelve months of the year. We do not imply a one-month abatement would be permissible. That question is not before us in this appeal. We merely hold the family court is not foreclosed by this opinion from considering the issue if Benton presents it.

We now address Louwanna's two remaining claims of error. Louwanna's third point avers the commissioner erred in finding that Benton, at time of trial, "was current in the payment of child support due under the [1992] Order." Louwanna's fourth point charges the commissioner with error in ordering her to pay Benton $750 as attorney fees.

We hold no error of law appears as to either of those rulings and a discussion of them would have no precedential value. Accordingly, those rulings are affirmed in compliance with Rule 84.16(b).

The decree appealed from is affirmed except as to the provisions which modify the child support awarded Louwanna in the 1992 order. All provisions in the decree appealed

---

**13.** Footnote 9, *supra.*

**14.** *But see: Schubert v. Tolivar*, 905 S.W.2d 924, 927[6] (Mo.App. E.D.1995).

from which purport to modify the child support in the 1992 order are reversed. The child support award in the 1992 order remains intact. Costs of this appeal are taxed half against Benton and half against Louwanna.

SHRUM, C.J., and PARRISH, J., concur.