**In the ESTATE OF Wilma C. SCHLER,
Deceased, Glynda Naylor, Personal
Representative, Respondent,**

v.

**Sandra Lee BENSON, Appellant.**

**No. WD 53367.**

Missouri Court of Appeals,
Western District.

June 17, 1997.

Jerome E. Brant, Kett R. Craven, Withers, Brant, Igoe & Mullennix, P.C., Liberty, for appellant.

Gary G. Sprick, Fayette, for respondent.

Before LAURA DENVIR STITH, P.J., and BRECKENRIDGE and HANNA, JJ.

LAURA DENVIR STITH, Presiding Judge.

In her will, decedent Wilma C. Schler bequeathed to her son, Larry Joe Schler, an option to purchase the family farm at a favorable price. The terms of the option required him to exercise the option within seven months of the first publication of Notice of Letters, said that the purchase price must be paid within thirty days of such notice, and provided that the option would be void and of no effect if not "so" exercised within "said" time.

Larry gave notice of his intent to exercise the option to his sister and co-personal representative, Sandra Lee Benson. Believing she had refused to agree to sell the property to him in accordance with the will, however, he did not actually tender the purchase price to her within thirty days of the notice. When he later tried to do so, his sister expressly refused to accept the tender because she claimed that time was of the essence in exercise of an option and that her brother's failure to close within thirty days of giving notice of intent to exercise the option voided the option. The probate court later found the option had been validly exercised and ordered sale of the property to Larry pursuant to the option. Sandra appeals.

We affirm. We find that Larry's notice was effective even though given before the issuance of letters and appointment of a personal representative, and that, once he gave notice, then the option was transformed into a bilateral contract for the sale of land. Time is not of the essence in such contracts unless expressly made so in the contract. While the will made time of the essence in exercising the option, it did not make time of the essence in payment of the purchase price. Here, tender of payment occurred within a reasonable time after exercise of the option, and accordingly the probate court properly directed sale of the farm to Larry pursuant to the option.

*I. FACTUAL AND PROCEDURAL BACKGROUND*

Wilma C. Schler died testate on March 15, 1996, survived by her two children, Respondent Larry Joe Schler and Appellant Sandra Lee Benson. In her Last Will and Testament, the decedent made her two children co-personal representatives of her estate and gave the residue of her estate to both children equally. She also, however, gave to her son, Larry, an option to purchase the family farm in Howard County, Missouri, at a favorable price. The will set forth very specific terms for exercise of the option, as follows:

I give to Larry Joe Schler the option and privilege to purchase the bottom farm on which I reside of approximately 150 acres in Howard County, Missouri, for the sum of $400.00 per acre. *Said option shall be exercised by written notice of intent to do so delivered to my personal representatives within seven (7) months after the first publication of Notice of Letters granted upon my estate. In such event the purchase price shall be paid and the transaction closed within thirty (30) days after said notice is given. If any option is not so exercised within said time, that option shall be void and of no effect.*

(emphasis added).

On March 26, 1996, Larry and Sandra filed an application with the circuit court of Howard County for letters testamentary. Because Larry would need his sister's approval—as co-personal representative—for the sale of the farm to him, on that same day Larry also prepared a letter to Sandra which stated:

As stated in the Last Will and Testament of Wilma C. Schler, of Howard County, Missouri, dated June 7, 1988; I have the option and privilege to purchase the bottom farm which is approximately 150 acres in Howard County, Missouri for the sum of $400.00 per acre. I would like to exercise this option as soon as possible. The total amount paid for this land will be $60,000.00 to the estate of Wilma C. Schler.

I would appreciate a reply to this request as soon as possible.

Larry's letter, dated March 26, 1996, was postmarked March 27, 1996, the same day that the decedent's will was admitted to probate and the probate court appointed the two siblings as personal representatives of the estate. First publication of Notice of Letters was made on April 6, 1996.

Sandra did not respond to her brother Larry's notice of intent to exercise the option. He therefore contacted her in "the first part of April" and requested that she and her husband meet him at the McDonald's in Warrensburg, Missouri. Larry testified that he communicated to Sandra and her husband at that meeting that he wanted to exercise his option and purchase the farm. He also testified that he brought the money to purchase the farm to this meeting, but did not complete the sale because his sister

would not agree to do so unless he gave her a similar option to purchase the farm upon his death or if he should desire to sell the farm at an earlier time. More specifically, Larry said that from the tenor of the conversation he thought his sister was refusing to agree to the sale of the farm to him as provided for in the will unless he agreed to put a similar option to let her purchase the farm in his will. Since he was not willing to give her such an option at his death, he thought that meant that she would not agree to sale of the farm to him in her capacity as personal representative. He therefore did not tender the purchase money to his sister at that time because he thought tender would be futile.

Sandra testified to a different understanding of what occurred at the McDonald's meeting. She said that she understood that her brother wanted to purchase the farm, and admitted that she had requested an option similar to the one he had been granted in the will. She claimed, however, and her brother confirmed, that she never explicitly refused to complete the sale, nor was she ever directly asked whether she would agree to complete the sale even if her brother would not give her the option she requested. She said that her brother never asked her to sign the papers necessary for him to complete the purchase.

On April 26, 1996, one month after he had sent the first notice of intent to exercise the option, Larry sent his sister a second, identical notice of intent to exercise the option. His sister had by this point obtained an attorney. Her attorney sent Larry's attorney a letter stating that Sandra believed that the option had expired by its own terms because Larry had failed to close the sale within thirty days of giving notice on March 26, 1996.

In response, Larry's attorney sent another notice to Sandra stating that Larry had exercised the option as set forth in his April 26, 1996, notice and that he requested that the closing be conducted at 2:00 p.m. on May 22, 1996, at the offices of the estate's attorney in Boonville, Missouri. The parties agree that Sandra did not appear at the closing on that date, according to Sandra because she believed the option had already

expired since the sale was not closed within thirty days of exercise of the option.

Because the siblings could not agree as to the option, the estate's attorney requested the court to appoint a new personal representative. On June 28, 1996, the court appointed Glynda Naylor as successor personal representative, and she filed a petition to sell the farm to Larry in accordance with the option.

Following a hearing, the probate court issued Findings of Fact stating that it believed Larry had given valid written notice of his exercise of the option on March 26, 1996, and that the validity of the notice was not affected by the fact that it was given prior to the first publication of Notice of Letters. The probate court also found that Sandra had refused to agree to close the sale, but that her brother was ready, willing, and able to close at all times after March 26, 1996, and that for this reason the fact that the sale was not closed within thirty days after exercise of the option did not render the option void. Therefore, the probate court issued an order authorizing and directing Ms. Naylor, as personal representative, to sell Larry the farm for the amount stated in the will. This appeal by Sandra followed.

## II. STANDARD OF REVIEW

The trial court's decision in a court-tried case will not be disturbed on appeal unless the judgment is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Vanderford v. Cameron Mut. Ins. Co.*, 915 S.W.2d 391, 392 (Mo.App. 1996). The trial court's decision is presumed correct, and the appellant has the burden of showing error. *Kerr v. Jennings*, 886 S.W.2d 117, 123 (Mo.App.1994). We will affirm if the court below reached the right result, even if for the wrong reason. *Graue v. Missouri Property Ins. Placement Facility*, 847 S.W.2d 779, 782 (Mo. banc 1993); *Fix v. Fix*, 847 S.W.2d 762, 766 (Mo. banc 1993); *Harvey v. Village of Hillsdale*, 893 S.W.2d 395, 398 (Mo.App.1995).

### III. THE EFFECT OF GIVING NOTICE BEFORE THE OCCURRENCE OF THE EVENT WHICH WAS TO TRIGGER THE NOTICE

The first issue is whether the letter sent by Larry on March 26, 1996, was a timely exercise of his option to purchase the farm. The will states that Larry must exercise his option "within seven (7) months after the first publication of Notice of Letters." Here, first publication of notice of letters was made on April 6, 1996. Larry, however, had sent his notice of intent to exercise the option to his sister more than a week earlier, on March 26, 1996. All parties concede that this letter was an exercise of the option. They differ as to whether it was effective, however.

Ironically, it is Larry who argues that his own letter was not a valid exercise of the option because it was made before the first publication of notice of letters. It is to his benefit to so argue because if the March 26, 1996, notice is invalid, then the first valid notice was that given by him on April 26, 1996, and there is no question that his tender of payment on May 22, 1996, occurred within thirty days of April 26, 1996.

■ We agree with Sandra, however, that the March 26, 1996, notice was valid even though premature. The only reported cases on this or similar issues from other states have held that if notice is required to be given "within" a certain time after a specified event, it simply means that notice must be given *not later than* the time specified; it does not invalidate notice given prior to the specified time.

A good example is provided by *In re Kruse's Estate,* 170 Kan. 429, 226 P.2d 835 (1951), in which the Kansas Supreme Court addressed the meaning of the word "within" as used in a Kansas statute requiring that all claims against an estate be presented "within" nine months after the date of the first published notice. In that case, notice was first published on November 13, 1947, but the claimant had filed its claim more than a month earlier, on October 3, 1947. The court held that this claim was valid. Construing the meaning of the word "within", the court stated that the "the only reasonable and logical interpretation of the word as used in the statute is that it is a word of 'limitation' and means a creditor must file his claim *not later* than nine months after the date of the first published notice to creditors." *Id.* 226 P.2d at 839.

The Connecticut Supreme Court reached the same conclusion in *State v. Griffin,* 171 Conn. 333, 370 A.2d 1301 (1976). In that case, a statute allowed the probate court to order an executor or administrator to require claims against an estate to be presented "within" a time period to be set by the probate court. The claimant gave notice of its claim to the deceased's sole heir on January 28, 1974, but the heir was not appointed as administratrix until March 11, 1974. The court held that this premature notice was valid, stating that "the word 'within' as used in § 45–205 means not later than the termination date of the limitation order, but does not require that claims be presented after the appointment of the fiduciary." *Id.* 370 A.2d at 1305. In reaching this conclusion, the court noted that it was reasonable for the claimant to expect that the decedent's sole heir would be appointed administratrix.[1]

The rationale set out in these cases supports the conclusion that Larry's March 26, 1996, letter giving notice of his intent to exercise the option is valid even though given prematurely, and we adopt that rationale here. We disagree with Respondent that adoption of this rule will lead to absurd results in which notice may be given before the death of the decedent, or in which notice is given to a person who ultimately does not become personal representative, or where the letters are not issued for many months after the notice is given. Such situations can be avoided by holding that the premature notice, while valid, does not become effective

---

1. *See also Schwarzschild v. Binsse,* 170 Conn. 212, 365 A.2d 1195 (1976) (holding that notice of a claim against an estate was valid when presented to a surviving spouse during the period between her application for administration and her subsequent appointment); *Park County ex rel.*

*Park County Welfare Dep't v. Blackburn,* 394 P.2d 793 (Wyo.1964) (holding that notice was valid when given before letters testamentary had issued but after probate proceedings had been opened).

until the conditions which were to have preceded it have occurred. In the instant case, for example, this would mean that Larry's notice given approximately ten days before publication of notice of letters was valid even though premature, but that it was of no effect until first publication of notice of letters was issued on April 6, 1996.

While we are not aware of any Missouri cases which have applied this rule to premature notice of an election in a will, we do note that Missouri follows a comparable rule in determining the effect of filing a premature notice of appeal. Rule 81.05(b) provides that the premature filing of a notice of appeal does not render the notice void or invalid. Instead, the effect of the notice is suspended until the judgment sought to be appealed from becomes final. As soon as the judgment is final, the previously-filed notice becomes effective. *In re Marriage of Bloom,* 926 S.W.2d 512, 516 (Mo.App.1996); *Buchanan v. Rentenbach Constructors, Inc.,* 922 S.W.2d 467, 469 (Mo.App.1996). The rationale behind Rule 81.05(b) is to protect "litigants whose counsel in an abundance of caution or by mistake file premature notices of appeal in such situations." *State ex rel. State Highway Comm'n v. Tate,* 576 S.W.2d 529, 531 (Mo. banc 1979).

■ That rationale has equal application here. Larry's March 26, 1996, notice, while premature, was not ineffective. Its effect was simply suspended until first publication of notice of letters occurred on April 6, 1996. It then took immediate effect. Because the notice is thus considered as if given the very first day it could be given, it clearly was timely. However, it is also undisputed that Larry did not actually tender the purchase price for the property until May 22, 1996, which is more than thirty days after notice became effective. We must therefore decide whether time was of the essence in regard to tender, and if so, whether tender was waived by Sandra's alleged refusal to agree to sale of the farm to her brother during the meeting at McDonald's.

## IV. TIME FOR PAYMENT WAS NOT OF THE ESSENCE HERE

■ We agree with Sandra that under Missouri law time is of the essence in the exercise of an option. *Lusco v. Tavitian,* 296 S.W.2d 14, 16 (Mo.1956); *Hendricks v. Northcutt,* 820 S.W.2d 689, 693 (Mo.App. 1991); *In re Estate of Weinsaft,* 647 S.W.2d 179, 181 (Mo.App.1983). We disagree, however, with her conclusion that this rule applies to our determination of whether the option became void when Larry failed to tender the purchase price within thirty days of his exercise of the option.

■ Under Missouri law, once an option to purchase land is exercised it changes its status from a unilateral, irrevocable offer into an enforceable bilateral contract for the sale of land. *Paul's Rod & Bearing, Ltd. v. Kelly,* 847 S.W.2d 68, 73 (Mo.App.1991); *Nahn v. Soffer,* 824 S.W.2d 442, 444 (Mo.App. 1991); *Estate of Polete v. Campbell,* 764 S.W.2d 179, 180 (Mo.App.1989); *Frey v. Yust,* 516 S.W.2d 321 (Mo.App.1974). As a result, the rules governing payment of the purchase price for land subsequent to exercise of an option are the same as the rules governing payment of the purchase price of land under other bilateral contracts for the purchase of land: "time is not ordinarily of the essence; i.e., completion of the sale prior to the termination of the option date is not required." *Nahn,* 824 S.W.2d at 444. *See also Johnson v. Gregg,* 807 S.W.2d 680 (Mo. App.1991) (time not of essence in bilateral contracts for sale of land); Frank James, The Law of Option Contracts, §§ 919–920 (1916) ("The rule is that time of payment of the price, under a contract raised by an election, is not essential unless expressly so provided in the agreement or implied from the circumstances.").

Authorities also agree that time is not of the essence in a contract for the sale of land even if the contract calls for payment at a specific time, unless some other language indicates that the time specified for payment is of the essence. Thus, as Corbin notes:

[T]he fact that a specific time is fixed for payment or for conveyance does not make "time of the essence"—at least, it does not make performance at the *specified* time of the essence. Failure to pay at that time is

not per se sufficient to terminate the seller's duty to convey.

*3A Arthur Linton Corbin, Corbin on Contracts § 716 (1960).* Corbin further states:

Neither conveyance nor payment on the day specified is a condition precedent to the duty of the other party to render his agreed performance in return; and one guilty of slight delay can nevertheless get a decree for specific performance or a judgment for damages if the other party refuses to perform.

*5A Arthur Linton Corbin, Corbin on Contracts, § 1177 (1964).*

The reason time is not of the essence in contracts for the sale of real estate is that delays are common, the injury caused by delay is minor, and performance at a later time is characterized as substantial performance. *3A Corbin, supra § 716.* The parties view the specific date set for closing as a goal, and not as a deadline. *14 Richard R. Powell, Powell on Real Property ¶ 881[5] (1997).*

Performance, however, must be made within a time that is reasonable under the circumstances. *Nahn,* 824 S.W.2d at 444 (holding that where an option contract for the sale of land did not contain a closing date, it was an implied requirement that the closing must be within a reasonable time); *Honeyfield v. Lambeth,* 519 S.W.2d 342, 345 (Mo.App.1975); *3A Corbin, supra, § 716.* Furthermore, even when time is not of the essence, late performance is technically a breach of the contract, and the non-breaching party can recover damages, but is not discharged from its own performance. *Powell, supra, ¶ 881[5].*

In applying these rules to the option in the decedent's will, we note that the paragraph containing the option does not specifically state that the time for payment is of the essence. Therefore, we look to the language and purpose of the bequest to determine whether the parties clearly manifested an intent that time be of the essence. *Johnson,* 807 S.W.2d at 686.

The will states in relevant part that the option "shall be exercised by written notice of intent to do so ... within seven (7) months ..." The will then states that:

In such event the purchase price shall be paid and the transaction closed within thirty (30) days after said notice is given. If any option is not *so exercised within said time,* that option shall be void and of no effect.

(emphasis added).

Sandra argues that the final clause making the option void and of no effect if not exercised within "said time" applies to both the timely exercise of the option and to the timely payment of the purchase price. Therefore, she argues, both time limits are made of the essence by the express language of the will.

We agree that the will makes time of the essence in regard to exercise of the option within seven months of publication of first notice of letters. This is clear from the fact that the will states that the option is exercised by giving notice within the seven month period, and from the fact that the final clause of the bequest states that if the option is not "so exercised" within "said" time, then it is void and of no effect. Because the option is exercised by the notice, this means that failure to give notice within the seven month period makes the option void and of no effect.

The will does not similarly state that payment of the purchase price within the time specified makes the option void and of no effect, however. Indeed, such a requirement would be inconsistent with the fact that the will permits Mr. Schler a seven month period in which to exercise the option. He could have taken that full seven months to do so, and then an additional thirty days to close on the property. Instead, he gave notice immediately. While this notice triggered the thirty day period for payment of the purchase price, "merely fixing a day for the payment of the money does not make the time of payment essential." *James, supra, § 920.*

Where, as here, the option was exercised well within the outside limit of time provided for exercise of the option, we cannot say that the decedent intended that time be

of the essence in payment of the purchase price. Accordingly, we find that time was not of the essence, that the delay in payment was not prejudicial and did not affect the exercise of the option, and that the probate court properly approved sale of the farm to Larry.

Because of our resolution of this issue, we need not reach the issue whether the probate court was correct in holding that Sandra effectively refused to agree to the sale in her capacity as personal representative prior to the expiration of the thirty day period and thereby waived tender by Larry.

For the foregoing reasons, the judgment is affirmed.

All concur.

