In the ESTATE OF Esther M. HEYL.

Charles R. Heyl, Plaintiff/Appellant,

v.

Diahne Marie Heyl, as Personal Representative of the Estate of Esther M. Heyl, Defendant/Respondent.

No. ED 77975.

Missouri Court of Appeals, Eastern District, Division One.

Feb. 6, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 12, 2001.

Application to Transfer Denied April 24, 2001.

Francis X. Neuner, Jr., Francis E. Pennington, III, St. Louis, MO, for appellant.

John E. Toma, Jr., Jeffrey N. Klar, St. Louis, MO, for respondent.

ROBERT G. DOWD, Jr., Presiding Judge.

Charles R. Heyl appeals the circuit court's grant of summary judgment in favor of Diahne Marie Heyl, as the personal representative of the Estate of Esther M. Heyl, and against Charles on his claim for

specific performance of an option contract to purchase property entered into with the decedent, Esther M. Heyl, the mother of Charles and Diahne. Charles contends the circuit court erred in granting Diahne's motion for summary judgment because she was not entitled to judgment as a matter of law. Charles asserts that he did not fail to comply with any condition precedent to Diahne's obligation to convey the property, but rather timely exercised his option to purchase the property and performed his obligations under the agreement. Because we find Diahne was not entitled to judgment as a matter of law, we reverse the trial court's grant of summary judgment in her favor. Thus, we remand the case for further proceedings consistent with this opinion.

 Our review of summary judgment is de novo. *ITT Commercial Finance Corp., et al. v. Mid–America Marine Supply*, 854 S.W.2d 371, 376 (Mo. banc 1993); *Loskot v. Old Mines Creek Land Co.*, 996 S.W.2d 101, 102 (Mo.App. E.D.1999).[1] The record is viewed in the light most favorable to the non-moving party, according that party all reasonable inferences that may be drawn from the record. *ITT Commercial Finance Corp.*, 854 S.W.2d at 376. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true, unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377.

The record, viewed with this standard in mind, shows that prior to her death, Esther M. Heyl entered into a purchase option agreement with Charles. The agreement granted Charles an option to purchase the real property and improvements located at 163 West Barton in the City of St. Louis for $50,000 subject to assuming any existing debt on the property. Charles was given the option to purchase the property in lieu of taking under his mother's will. Under the terms of Esther M. Heyl's will, her estate was to be divided equally between Charles's sister, Diahne, and their brother.

Under the agreement, Charles could exercise his option to purchase the property (1) if his mother gave notice of her intention to sell the property to a third party; (2) if his mother died; or (3) upon the expiration of the fifteen-year period from the date of the execution of the agreement, which ran concurrently with the term of the lease. As to exercising the option, the agreement provided under the paragraph entitled "Expiration of Option":

In the event the triggering event allowing Purchaser to exercise the option granted herein shall be due to the death of Seller, Purchaser shall exercise his option to purchase not later than thirty (30) days after the appointment of the Personal Representative for Seller's estate and in the event no Personal Representative shall be appointed within sixty (60) days after the death of Seller. In the event the triggering event shall be either Seller's written notice to Purchaser of her intention to sell the property or the expiration of the Lease, Purchaser shall exercise his option to purchase not later than thirty (30) days after receiving written notice of Seller's desire to sell the property or the expiration of the Lease, respectively.

1. Applying the de novo standard of review of a grant of summary judgment in a court of equity.

If the options to purchase are not exercised within the times specified above, this Agreement shall automatically cease and terminate upon the expiration of the time specified to exercise this option after the occurrence of the third and final triggering event. Neither Seller [n]or Purchaser shall have any further rights under this Agreement, and this Agreement shall be null and void, all without further action or documentation by either Seller or Purchaser.

The Purchase Option Agreement further provided in the paragraph entitled "Manner of Exercise, Rights, Obligations and Remedies":

The Purchaser's option to purchase shall be exercised by the timely delivery to the Seller or to the Seller's Personal Representative of a written notice of exercise duly executed by the Purchaser. If requested to do so, the Seller or Personal Representative of Seller's Estate shall provide the Purchaser a written acknowledgement of Seller's receipt of the Purchaser's notice of exercise. The sale of the real estate shall be closed within ninety (90) days after delivery of said notice by payment of $50,000 in cash, pursuant to the provisions and conditions contained in the real estate Sale Contract (the "Sale Contract"), which is attached hereto as Exhibit A and by reference incorporated herein. The parties shall execute and enter into said Sales Contract as soon as practicable after Purchaser delivers notice of his exercise of the option. In addition to any other rights or remedies which either or both of the Parties may have at law or in equity, this Agreement, the option and the Sale Contract herein provided for shall be enforceable by injunctive relief and/or specific performance and the prevailing party shall be entitled to his/her or its cost of litigation and enforcement, including court costs and reasonable attorneys' fees.

Esther M. Heyl died in January 1999. Diahne was appointed the personal representative of her mother's estate on February 9, 1999. Charles sent written notice to Diahne on March 5, 1999, that he was exercising his option to purchase the property. Thereafter, on March 9, 1999, Charles delivered a sale contract to Diahne. The proposed sale contract differed from the form of the sale contract attached to the Purchase Option Agreement. Diahne refused to accept the proposed sale contract because it contained a financing contingency and required her to affirm the mortgage loan was current and the payments were timely. The Purchase Option Agreement contained no such provisions or requirements. Charles included the new provisions in the proposed sale contract because he had to assume the loan on the property pursuant to the Purchase Option Agreement, and he sought information from Diahne, as well as the lender, concerning the status and payment history of the loan. Diahne contends Charles already had this information because she provided all the loan documents to his attorney on March 8, 1999. In the letter rejecting Charles's sale contract, Diahne indicated she would execute a sale contract that was identical to the form contract attached to the Purchase Option Agreement.

On March 18, 1999, Charles, through his attorney, submitted revised language in the proposed sale contract. Diahne accepted the revised language in letters dated March 19, 1999 and March 25, 1999. Charles then telefaxed a reply to Diahne on April 6, 1999, indicating he would forward the revised form of the sale contract "within a day or so." Diahne did not receive a revised contract until June 11, 1999.

On June 11, 1999, Charles offered to purchase the property for an amount equal to the remaining principal balance on the loan, $78,300 .67. Diahne rejected that offer because the offer price was not the price established in the agreement; Charles had failed to submit a contract that conformed to the form attached to the agreement; and Charles had failed to close the purchase of the property by June 4, 1999, the day on which the ninety-day period from the exercise of the option expired.

Weeks later, in August 1999, Charles tendered another sale contract that conformed to the one attached to the Purchase Option Agreement. Diahne rejected the contract, stating that she had no obligation to convey the property because the contract was not timely.

On October 5, 1999, Charles filed a Verified Petition for Specific Performance of the Contract asking the circuit court to compel Diahne to transfer the property. Both Charles and Diahne filed motions for summary judgment. Charles moved for summary judgment because all the essential terms of the Purchase Option Agreement were met. Diahne moved for summary judgment on the grounds that she had no obligation to convey the property because (1) Charles's claim was barred by the six-month rule of Section 473.360, RSMo 1994, and (2) Charles failed to satisfy the condition precedent to close the transaction within ninety days. Diahne argued that Charles had failed to provide her with an acceptable sale contract conforming to the Purchase Option Agreement before the ninety-day period expired.

Thereafter, the circuit court entered its judgment granting Diahne's motion for summary judgment and denying Charles's motion. The circuit court rejected Diahne's first argument finding that "[Charles's] cause of action is one for spe-cific execution of contract under section 473.303 RSM[o] and is therefor[e] not time-barred by section 473.360 RSM[o]." In granting Diahne's motion for summary judgment, the circuit court further found that "there is no genuine issue as to any material fact and that [Diahne] is entitled to judgment as a matter of law." Upon a motion by Diahne, the circuit court entered an amended order and judgment again granting Diahne's motion for summary judgment and awarding her attorneys' fees in the amount of $11,864. This appeal follows.

In his sole point, Charles contends the circuit court erred in granting Diahne's motion for summary judgment because she was not entitled to judgment as a matter of law. Charles asserts that he did not fail to comply with any condition precedent to Diahne's obligation to convey the property, but rather timely exercised his option to purchase the property and performed his obligations under the agreement.

■ Diahne contends Charles was not entitled to specific performance because he "came before the court with 'unclean hands.'" Diahne asserts that Charles is not entitled to equitable relief because he demonstrated "unclean hands" and a lack of good faith by submitting two proposed sale contracts, one within the ninety days and one beyond the ninety-day period, that did not conform to the sale contract in the Purchase Option Agreement. However, we do not find facts in the record before us demonstrating Charles had unclean hands.

Diahne's reliance on *Conley v. Rauschenbach*, 863 S.W.2d 617 (Mo.App. E.D. 1993) is misplaced. In *Conley*, the purchaser was also the sellers' real estate broker and acted in his own interest by interfering with other potential purchasers who were willing to pay more. *Id.* at 618–19. The *Conley* court affirmed the trial

court's denial of the purchaser's request for specific performance because the purchaser's neglect of his responsibilities to the sellers as their broker to benefit himself clearly demonstrated unclean hands. *Id.* at 620. We do not find Charles's actions of submitting contracts differing from the sale contract in the Purchase Option Agreement and waiting to discover financial and loan information concerning the property so egregious to demonstrate unclean hands.

■ Next we turn to Charles's point on appeal of whether he is entitled to specific performance. Diahne argues Charles was not entitled to specific performance because he did not perform every essential obligation required.

■ We agree, as do both parties, that under Missouri law time is of the essence in the exercise of an option. *Estate of Schler v. Benson*, 947 S.W.2d 495, 500 (Mo.App. W.D.1997). We disagree, however, with Diahne's conclusion that this rule applies to the determination of whether the option became void when Charles failed to tender the purchase price within ninety days of his exercise of the option.

■ Under Missouri law, once an option to purchase land is exercised it changes its status from a unilateral, irrevocable offer into an enforceable bilateral contract for the sale of land. *Estate of Schler*, 947 S.W.2d at 500. Thus, the rules governing payment of the purchase price for land subsequent to exercise of an option are the same rules governing payment under other bilateral contracts for the purchase of land. *Id.* Time is not ordinarily of the essence. *Id.*

We find *Estate of Schler* analogous to the case a bar. In *Estate of Schler*, the decedent's will granted to her son an option to purchase the family farm at a favorable price. *Id.* at 497. The will re-quired that the son exercise the option within seven months of the first publication of the notice of letters. *Id.* The will further provided that the son pay the purchase price within thirty days of giving notice of exercise of the option. *Id.* The will stated that the option would be "void and of no effect" if not exercised within the specified time. *Id.* The son gave notice of his exercise of the option but failed to pay the purchase price within thirty days thereafter. *Id.* The personal representative, who was the purchaser's sister, met with her brother to discuss the sale. *Id.* at 498. The sister demanded that the brother grant her an option to buy the property after his death. *Id.* Brother refused and thereafter his sister refused to sell the property to him because the brother had failed to close the sale within thirty days of giving notice of the exercise voided the option. *Id.* The probate court found that the option had been validly exercised and ordered the sale of the property. *Id.*

In affirming the probate court, the court found that once the son gave notice of the exercise of his option, the option changed its status from a unilateral, irrevocable offer into an enforceable bilateral contract. *Id.* at 500. The court noted that "time is not of the essence in contract for the sale of land even if the contract calls for payment at a specific time, unless some other language indicates that the time specified for payment is of the essence." *Id.; See Gulf Oil Corp. v. Ferguson*, 509 S.W.2d 1, 5 (Mo.1974). The court further noted that performance must be made within a time that is reasonable under the circumstance. *Id.* at 501. The court stated that even when time is of the essence, late performance is technically a breach of contract, and the non-breaching party can recover damages but is not discharged from its own performance. *Id.* The court explained that time was of the essence in regard to

the exercise of the option, and the option would be void if not exercised within that time but found that the will did not similarly state that payment of the purchase price within the specified time made the option void and of no effect. *Id.* Accordingly, the court found that time was not of the essence, that the delay in payment was not prejudicial, and did not affect the exercise of the option. *Id.*

We find the case at bar analogous. Here, the Purchase Option Agreement between Esther Heyl and Charles made time of the essence in the exercise of the option, but it did not make time of the essence in payment and close of the sale of the property. Once Charles gave notice of his exercise of the option to purchase the property, the Purchase Option Agreement effectively was transformed into a bilateral contract between Charles and Diahne as the personal representative of Esther M. Heyl's estate. Since time was not of the essence, the failure to close the sale of the property within the ninety days does not discharge Diahne of her obligation to sell the property.

Diahne attempts to distinguish *Estate of Schler* by arguing the seller in *Estate of Schler* was the one who tried to change the agreement, and the purchaser attempted to perform every obligation required of him. Diahne asserts that here the buyer, Charles, attempted to change the agreement unlike the buyer in *Estate of Schler.*

We do not find Diahne's distinction persuasive. Even though it was Charles who proposed different contracts, a bilateral contract was still formed after Charles gave notice of the exercise of his option, and thus, any late performance would be a breach of contract in which the nonbreaching party could only recover damages.

Diahne further argues that Charles did not perform every obligation required by him as the buyer in *Estate of Schler* and thus, is not entitled to specific performance. We disagree. There are no facts in the record before us that shows Charles was not ready, willing, and able to perform his obligations under the agreement once a sale contract was agreed upon by the parties.

Because we find Diahne was not entitled to judgment as a matter of law, we reverse the circuit court's grant of summary judgment in her favor. We remand the case for further proceedings consistent with this opinion.

MARY RHODES RUSSELL and RICHARD B. TEITELMAN, JJ., concur.