**William NAHN and Shirley Nahn, Respondents,**

v.

**Donald SOFFER and Ten–Eighteen Investment Corporation, Appellants.**

**No. 58928.**

Missouri Court of Appeals, Eastern District, Division Two.

Oct. 1, 1991.

Steven W. Koslovsky, Ziercher & Hocker, Clayton, for appellants.

Scott O. Marshall, Clayton, for respondents.

AHRENS, Judge.

In this bench-tried action, appellants Donald Soffer and Ten–Eighteen Investment Corporation (Ten–Eighteen) appeal from the trial court's judgment in favor of respondents William and Shirley Nahn on respondents' petition to quiet title and on appellants' counterclaim for specific performance. We affirm.

Respondents own 1.26 undeveloped acres near Telegraph Road in St. Louis County. On June 28, 1986, Soffer and respondents entered into a one-year option contract for the sale of the property. The option provides in part:

> This option may be accepted by either said second party or his assigns at any time on or before the 28th day of June, 1987, by giving written notice thereof to said first party.

It also provides that if

> "[Soffer] or his assigns, is [sic] unable to obtain an ordinance or permit from the proper authorities to conduct second party's or his assign's business upon said premises, ... *this option or the contract arising by reason of the acceptance of this option,* may at the election of said second party or his assigns, become null and void and said second party and his assigns shall be relieved of all liability hereunder."

By letter dated June 10, 1987, Soffer notified respondents he was exercising the option "subject to all terms of the option"; the letter did not specify a closing date. Nahns' attorney informed Soffer in a July 15, 1987, letter that because the transaction had not been closed by June 28, 1987, the option had expired and Soffer had "no further contractual rights in this matter."

One week later, Soffer's attorney responded in a letter:

> "[I]t is Mr. Soffer's position, that upon exercise of the Option, a contract has been formed to purchase the property between Mr. Soffer and the Nahns. No dates are set forth in the Option with regard to the closing of the contract formed by its exercise or the elimination of the zoning contingency and the time for closing."

That letter also stated, "Mr. Soffer shall shortly commence efforts to obtain appropriate zoning." On August 3, 1987, Soffer filed an affidavit with the St. Louis County Recorder of Deeds, describing the property and stating that Soffer had exercised an option to acquire the property.

At some point, Soffer assigned his interest in the property to Ten–Eighteen, a "shell corporation" Soffer uses to shelter his identity. Thereafter, on February 16, 1988, Ten–Eighteen entered into an option contract with Shell Oil for the sale of the Nahns' property. Shell Oil filed a petition for rezoning of the property on June 8, 1988.

In a November 28, 1988, letter to Soffer, the Nahns denied Soffer had any legal or equitable interest in the property, and demanded Soffer "record an appropriate affidavit or quit claim deed renouncing any interest in the property...." Shell Oil withdrew its petition for rezoning in February, 1989. In a February 2, 1989 letter, Soffer's attorney notified the Nahns that Soffer would close the transaction on March 16, 1989.

On March 24, 1989, the Nahns filed this quiet title action seeking an order declaring them to be "fee simple absolute owners" of the property, and declaring that neither Soffer or Ten–Eighteen "has any right, title or interest" in the property. Soffer and Ten–Eighteen filed a counterclaim for specific performance of the sale contract. In their reply to the counterclaim, the Nahns asserted, *inter alia,* that appellants' claim was "barred by breach of contract and by laches."

Following the presentation of evidence, the trial court entered judgment in favor of

the Nahns on their petition to quiet title, and against Soffer and Ten–Eighteen on the counterclaim for specific performance.

In their sole point, appellants contend the trial court erroneously applied the law in entering its judgment, "because Soffer timely exercised his option to purchase the subject property, creating a binding bilateral contract, which he was at all times ready, willing, and able to perform, but the Nahns repudiated Soffer's rights under the option and refused to convey the subject property."

■ The trial court's judgment will be sustained, unless "it erroneously declares or applies the law." *Wooten v. DeMean*, 788 S.W.2d 522, 524 (Mo.App.1990); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). No request having been made, the trial court made no detailed findings of fact. Therefore, this court "must assume that all fact issues were found in accordance with the result reached." *Jensen v. Borton*, 734 S.W.2d 580, 584 (Mo.App. 1987). Respondents offer several theories upon which the trial court may have based its decision. "Given that the trial court did not issue findings of fact and conclusions of law, this court cannot state with certainty the reasons guiding the trial court to its decision"; the trial court's judgment must be affirmed "if it is correct under any reasonable theory." *Id.*

As noted, the option contract is silent as to a closing date. When "an option contract to purchase involves real estate, the exercise of that option creates an enforceable bilateral contract, and time is not ordinarily of the essence; i.e., completion of the sale prior to the termination of the option date is not required." *Frey v. Yust*, 516 S.W.2d 321, 324 (Mo.App.1974). Accordingly, it is implied that Soffer was required to close within a reasonable time after exercising the option. *See Honeyfield v. Lambeth*, 519 S.W.2d 342, 345 (Mo. App.1975) (where option contract was silent as to the time of taking possession, the law implies that the parties meant for possession to be given within a reasonable time); *Frey*, 516 S.W.2d at 324 (payment may be made within a reasonable time after the

termination of the option date where the contract was silent as to time for payment).

The option contract permitted Soffer to void the "option or the contract arising by reason of the acceptance of this option" if he was "unable to obtain an ordinance or permit from the proper authorities to conduct second party's or his assign's business upon said premises...." Soffer presented evidence that the process to obtain approval of a zoning request in St. Louis County can take more than a year. Thus, the Nahns' repudiated the contract when they notified Soffer in July, 1987 that he had no further rights in the contract because he had not closed by June 28, 1987,—the expiration date of the option.

■ There is merit in appellants' assertion that the Nahns' repudiation excused appellants from any further performance under the contract. " '[W]here failure of a party to perform a condition is induced by a manifestation to him by the other party that he will not substantially perform his own promise, performance of such condition is waived and, therefore, excused.' " *McDermott v. Burpo*, 663 S.W.2d 256, 262 (Mo.App.1983) (quoting *Cooper v. Mayer*, 312 S.W.2d 127, 130 (Mo.1958)). Nonetheless, appellants' claim for specific performance is barred by laches.

■ Specific performance "is purely an equitable remedy" which "is invoked primarily that complete justice may be done between the parties, and courts of equity will not decree specific performance where it will result in injustice." *Kopp v. Franks*, 792 S.W.2d 413, 419 (Mo.App. 1990). Thus, specific performance "is not a matter of right but is a remedy applied by courts of equity, depending upon the facts in the particular case; and the trial court has judicial discretion within the established doctrines and principles of equity to award or withhold the remedy." *Id.* Accordingly, "[a] greater strength of case is required for a decree of specific performance than to defeat a claim for specific performance." *Id.*

■ "The invocation of laches requires that a party with the knowledge of facts

giving rise to its rights unreasonably delays asserting them for an excessive period of time and the other party suffers legal detriment therefrom." *Scheble v. Missouri Clean Water Comm'n,* 734 S.W.2d 541, 560 (Mo.App.1987). In determining whether the doctrine of laches applies in a particular case, an examination is made of "the length of delay, the reasons therefor, how the delay affected the other party, and the overall fairness in permitting the assertion of the claim." *Id.*

In the present case, twenty-one months passed from the time Soffer exercised the option to the date scheduled for closing. Contrary to appellants' assertions, the delay was not justified by Nahns' repudiation of the contract and the time required to seek zoning changes. While the Nahns' repudiation excused appellants' further performance under the contract, it did not excuse appellants' delay in asserting a claim for specific performance. Appellants' evidence indicated that in St. Louis County the processing of a zoning petition can take over a year; however, there was no evidence the process requires twenty-one months to complete. Further, the evidence established that a petition to rezone the property was not filed until June 8, 1988—nearly one year after Soffer exercised the option.

From the time the option contract was executed, the property's value increased from $200,000 to between $300,000 and $350,000. Moreover, Soffer failed to pay the real estate taxes on the property for 1986 and all subsequent years as required by the option contract. Appellants argue the Nahns' repudiation excused them from performing that condition. For the purpose of determining the applicability of laches, however, Soffer's failure to pay those taxes, together with the appreciation in the property's value supports a determination that respondents were adversely affected by appellants' unreasonable delay in asserting their claim.

The length of appellants' delay, the lack of justification therefor, and the effect of the delay on respondents, support a determination that it would be unfair to permit appellants to assert their claim for specific performance. *See Scheble,* 734 S.W.2d at 560. The doctrine of laches barred appellants' claim.

Thus, the trial court did not abuse its discretion in denying appellants' counterclaim for specific performance. The evidence established respondents' title to the property is good as against appellants. Therefore, the trial court did not err in quieting title to the property in the Nahns. *Moss v. Moss,* 706 S.W.2d 884, 887[2] (Mo. App.1986). The trial court's judgment is affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.