

# Missouri Court of Appeals
## Southern District

### In Division

JEFFREY BALDWIN, Individually, as )
agent for his children and grandchildren )
named below, as Beneficiary of the Roger )
Woodard Baldwin Revocable Trust dtd. )
November 5, 2001, as Amended and )
Restated, and certain sub-trusts created )
thereunder, and as Trustee of a descendant's )
trust in his name as described below, )
                                            )
            Petitioner-Appellant, )
                                              )
v. )        No. SD37567
                                              )        Filed: **April 28, 2023**
JAN KAYE BALDWIN, Individually, as )
Beneficiary, and as Trustee of the Roger )
Woodard Baldwin Revocable Trust dtd. )
November 5, 2001, as Amended and )
Restated, and certain sub-trusts created )
thereunder, )
                                              )
and )
                                              )
KAYLI BALDWIN-HYTEN, Individually, )
as a Beneficiary of the Roger Woodard )
Baldwin Revocable Trust dtd. November 5, )
2001, as Amended and Restated, and certain )
sub-trusts created thereunder, and as Trustee )
of a descendant's trust in her name as )
described below, )
                                              )
and )
                                              )
ANDREA BALDWIN-GREGG, )
Individually, as a Beneficiary of the Roger )

| Woodard Baldwin Revocable Trust dtd. | ) |
| November 5, 2001, as Amended and | ) |
| Restated, and certain sub-trusts created | ) |
| thereunder, and as Trustee of a descendant's | ) |
| trust in her name as described below, | ) |
| | ) |
| Respondents-Respondents. | ) |

APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

Honorable Michael M. Pritchett, Circuit Judge

**<u>AFFIRMED</u>**

Jeffrey Baldwin ("Jeff")[1] appeals the Findings of Fact, Conclusions of Law and Judgment (the "judgment") of the Circuit Court of Butler County, Probate Division ("trial court") denying, after a bench trial, all counts of Jeff's amended petition and granting the counter/cross-claim of Jan Baldwin ("Jan") for reformation of trust. Jeff presents two points on appeal: (1) the trial court erred in granting reformation because Jan's reformation of trust claim is barred by the two-year statute of limitations in Section 456.6-604.1(1),[2] and (2) the trial court erred in granting reformation because Jan's reformation claim is barred by laches. Because we find Jan's reformation of trust claim was not barred by Section 456.6-604.1(1) or the doctrine of laches, we affirm the judgment of the trial court.

## **<u>Factual Background and Procedural History</u>**

On November 5, 2001, Roger Baldwin ("Roger") executed the Roger Woodard Baldwin Revocable Trust (the "Trust"). Roger amended the Trust four times, with the last amendment on May 25, 2016, when Roger executed the Fourth Amendment and Second Restatement (the "Fourth Amendment"). Roger died on November 3, 2016.

---

[1] We use first names and nicknames consistent with the parties' briefing and the trial court's judgment to avoid confusion and for ease of reference. No familiarity or disrespect is intended.

[2] Unless otherwise noted, all statutory citations are to RSMo 2016.

Jan is Roger's surviving spouse of 36 years. Roger and Jan had two children together, Kayli Baldwin ("Kayli") and Andrea Baldwin-Gregg ("Andrea"). Jeff is Roger's son from a previous marriage.

Jan became trustee of the Trust at Roger's death. The Fourth Amendment stated that the residue of the Trust at Jan's death should be divided equally and distributed into three sub-trusts for Jeff, Kayli, and Andrea. The residue would include shares of two banks, Midwest Bancorporation, Inc. and Poplar Bluff Banc Company (the "Bank Stock") if the Bank Stock was still in the Trust at Jan's death.

On February 25, 2020, Jeff sued to remove Jan as trustee of the Trust and filed a verified motion for interim relief, both of which the trial court permitted Jeff to amend. On April 10, 2020, Jan filed a counter/cross-claim, seeking reformation of the Fourth Amendment based on mistake. Jeff moved to dismiss the counter/cross-claim, asserting the claim was time-barred under the two-year limitations period in Section 456.6-604.1(1) because it was filed approximately three and one-half years after Roger's death. Jeff also asserted by affirmative defense that Jan's claim was barred by laches. On December 15 and 16, 2021, the trial court held a bench trial on all pending claims. On April 29, 2022, the trial court entered its judgment denying Jeff's amended petition claims. Jeff does not challenge those parts of the judgment denying his amended petition. The trial court granted Jan's claim for reformation of the Fourth Amendment, finding:

> Jan proved by clear and convincing evidence that the Fourth Amendment was affected by a material mistake in that Roger erroneously signed the wrong document. Roger intended to sign Version 2 of the Fourth Amendment which left the Bank Stock solely to his daughters' sub-trusts upon Jan's death. However, on May 25, 2016, Roger was presented with and erroneously signed Version 1 of the Fourth Amendment which left all assets, including the Bank Stock, to his children equally upon Jan's death.

3

Jeff does not challenge this part of the judgment on appeal. The judgment reformed the Fourth Amendment to provide that any Bank Stock in the Trust upon Jan's death would be divided equally and distributed to Kayli and Andrea.

Although Jeff does not challenge the trial court's findings that Jan established grounds for reformation of the Fourth Amendment due to mistake by clear and convincing evidence, we include a limited summary of the trial court's factual findings to provide background for Jeff's arguments on appeal. The trial court found:

> 22.     However, at the time of the execution of the Fourth Amendment, Version 1 was erroneously presented to Roger which, upon Roger's death, distributed the Bank Stock in thirds to each of his three children, as opposed to Version 2 which distributed the Bank Stock only to the sub-trusts for Andrea and Kayli.
>
> 23.     Roger then mistakenly signed Version 1 believing that the document was the final draft of Version 2 and that it gave the Bank Stock to Andrea and Kayli upon Jan's death.

The trial court found the following concerning discovery of the mistake and events thereafter, none of which Jeff challenges on appeal: The mistake was not realized by Jan and Scott Malin ("Malin"), the attorney Roger hired to prepare the Fourth Amendment, until May 2019. After discovery of the mistake, Jan hired attorney Matthew J. Rossiter ("Rossiter") to investigate. On July 8, 2019, Jan filed a Petition for Letters Testamentary in the Probate Division of the trial court asking that she be appointed the Personal Representative of Roger's estate. Jan filed her Petition for Letters Testamentary so that, as Personal Representative, she would have the authority to obtain Roger's estate planning file from Malin. Jan was appointed Personal Representative of Roger's estate on July 12, 2019. On August 26, 2019, Jan moved for an order permitting Malin to release Roger's estate planning file to her as Personal Representative of Roger's estate. The court granted the motion on August 29, 2019. Jan received Roger's estate planning file in October 2019. Rossiter contacted Jeff's lawyer, Adam

4

Randle ("Randle"), on December 27, 2019 by phone and then followed up with an e-mail. Rossiter sent Randle a draft petition which framed the mistake issue along with evidence from Roger's estate planning file showing a mistake had occurred. Rossiter stated that Jan did not want to sue, but that there was clear evidence that a mistake occurred which needed to be rectified. On February 25, 2020, Jeff sued.

The trial court concluded Jeff had suffered no prejudice from any delay in discovery of Roger's mistaken signing of Version 1 instead of Version 2 because

> Jeff is in the exact same position now that he would have been had Jan discovered the mistake in 2016. This is not a situation where the Bank Stock was already distributed to Jeff and the reformation would rescind that distribution. Here, Jan is still alive, and the Bank Stock will not be distributed until her death, *and only if that stock still exists*. Further, given the complexity of Roger's estate plan, the shock of his unanticipated passing and Jan's reliance on lawyers and other professionals, it is not unreasonable that Jan did not immediately discover the mistake.

Jeff timely appealed.

### **Point I**

In Point I, Jeff asserts Jan's otherwise meritorious reformation claim is barred by the two-year statute of limitations in Section 456.6-604.1(1).[3]

#### Standard of Review

"On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." ***In re Killian***, 561 S.W.3d 411, 415-16 (Mo.App. 2018) (quoting ***Ivie v. Smith***, 439 S.W.3d 189, 198-99 (Mo. banc 2014)). "We view the evidence and all reasonable inferences in the light most favorable to the court's judgment."

---

[3] Jeff does not challenge the trial court's findings that Jan proved by clear and convincing evidence that the Fourth Amendment should be reformed due to mistake because Roger, the trust settlor, intended to sign Version 2 but signed Version 1.

*Stevenson v. Maxwell*, 605 S.W.3d 1, 5 (Mo.App. 2020) (citing *Schollmeyer v. Schollmeyer*, 393 S.W.3d 120, 123 (Mo.App. 2013)). "We will affirm the judgment if it is correct under any reasonable theory supported by the evidence." *Id.* (citing *Williams v. State, Dept. of Soc. Servs.*, 440 S.W.3d 425, 427 (Mo. banc 2014)).

"Whether a statute of limitations applies to a given cause of action is [ ] reviewed *de novo*." *Id.* (quoting *Davison v. Dairy Farmers of Am., Inc.*, 449 S.W.3d 81, 83 (Mo.App. 2014)). Likewise, whether a statute of limitations bars a cause of action is reviewed *de novo*. *Brantl v. Curators of Univ. of Mo.*, 616 S.W.3d 494, 497 (Mo.App. 2020). Questions of statutory interpretation also are reviewed *de novo*. *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO, Council 61 v. State*, 653 S.W.3d 111, 120 (Mo. banc 2022). When employing *de novo* review, we conduct independent review of the trial court's determination, without deference to the trial court's conclusions. *Pearson v. Koster*, 367 S.W.3d 36, 43-44 (Mo. banc 2012).

Analysis

The Missouri Uniform Trust Code (MUTC) at Section 456.4-415 permits "Reformation to correct mistakes" as follows:

> The court may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement.[4]

Jeff argues Jan's reformation claim is barred by the two-year statute of limitations in another provision of the MUTC, Section 456.6-604.1(1), which provides: "A person may

---

[4] *See also* 4C Mo. Prac., Trust Code & Law Manual § 456.4-415 Author's Comment (2022 ed.) ("Since the statute can only be invoked upon clear and convincing proof of a mistake of fact or law, it will be confined to a relatively small number of situations, correcting obvious mistakes and obviating the need to sue negligent scriveners in legal malpractice actions.").

6

commence a judicial proceeding to contest the validity of a trust that was revocable at the settlor's death within the earliest of: (1) two years after the settlor's death[.]"

Jan argues, and the trial court agreed, that Jan's action for reformation is subject to the ten-year statute of limitations in Section 516.110(3), which sets out a ten-year statute of limitations for "[a]ctions for relief, not herein otherwise provided for." *See also **Husch & Eppenberger, LLC v. Eisenberg***, 213 S.W.3d 124, 128 (Mo.App. 2006) ("There is no dispute that the statute of limitations for a contract reformation action is ten years.") (citing Section 516.110; ***Nuspl v. Mo. Med. Ins. Co.***, 842 S.W.2d 920, 923 (Mo.App. 1992)); ***M.I.K.S., LLC v. K-Mart Corp.***, No. 13-CV-00545-W-DGK, 2014 WL 294163, at *2 (W.D. Mo. Jan. 27, 2014) ("The statute of limitations for reformation in Missouri is ten years.") (citing Section 516.110).

Jeff argues Section 456.6-604.1(1) contains the applicable statute of limitations since Jan's reformation claim is "a judicial proceeding to contest the validity of a trust that was revocable at the settlor's death" under Section 456.6-604.1(1). We respectfully disagree.

Section 456.6-604.1(1) does not apply to Jan's claim for reformation of trust due to mistake because Jan's claim does not "contest the validity of a trust[.]" Instead, Jan's reformation claim acknowledged the validity of the Fourth Amendment and acknowledged the Fourth Amendment would be valid and legally enforceable absent court intervention. In her counter/cross-claim, Jan never used the word "invalid" and instead asserted only that the properly formed trust did not reflect Roger's intent:

> Therefore, the current terms of the Fourth Amendment as it relates to the Bank Stock require reformation in order to correct this material mistake and conform the terms of the Trust to the clearly evident intentions of [Roger] that the Bank Stock be distributed to the sub-trusts for Kayli and Andrea upon [Jan's] death.

Jan sought reformation of those parts of the Fourth Amendment related to the Bank Stock to reflect Roger's intent as trust settlor as to those provisions.

7

Jeff argues the Bank Stock was by far the largest asset in the Trust and that the reformation amounted to a wholesale rewriting of the Trust. But these arguments are irrelevant to our analysis of which limitations period applies because 1) Section 456.4-415 explicitly allows reformation of a trust to conform to the settlor's intent even if the terms of the trust are unambiguous and in no way limits reformation based on the size of the asset or the alleged materiality of the reformation, instead requiring a high burden of "clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement[,]" and 2) Jeff does not challenge on appeal the trial court's judgment that Jan satisfied Section 456.4-415 by providing clear and convincing evidence of the need for reformation. Neither of Jeff's arguments lead to the conclusion that Jan's request for reformation of the Fourth Amendment amounted to a trust contest governed by the limitations period in Section 456.6-604.1(1).[5]

Because Section 456.6-604.1(1) does not apply to Jan's reformation claim, the trial court correctly applied the ten-year limitations period in Section 516.110(3) for reformation actions generally and correctly concluded Jan brought her reformation of trust due to mistake claim well within the applicable limitations period.

Although the parties do not cite, and we have not located, a case directly on-point, our analysis is supported by a plain reading of the applicable statutes. "This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Am. Fed'n*, 653 S.W.3d at 120 (quoting *Parktown Imports, Inc. v. Audi of*

---

[5] Under Jeff's analysis, it seems *any* claim for reformation of trust would need to be brought within two years under Section 456.6-604.1(1) even though, as discussed above, Missouri courts have held the statute of limitations for reformation is 10 years. At oral argument, Jeff argued a claim for reformation based on vague and ambiguous trust terms might be able to be brought after two years under Section 516.110(3) because that claim might not "contest the validity of a trust[.]" But this argument is contrary to the plain language of Section 456.4-415, which provides: "The court may reform the terms of a trust, *even if unambiguous*, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence[.]" (emphasis added).

*Am. Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009)). "Courts look elsewhere for interpretation only when the meaning is ambiguous or would lead to an illogical result that defeats the purpose of the legislation." *Id.* (quoting *Ivie*, 439 S.W.3d at 202). "When the statute's language is unambiguous, a court must give effect to the legislature's chosen language." *Id.* (citing *Kerperien v. Lumberman's Mut. Cas. Co.*, 100 S.W.3d 778, 781 (Mo. banc 2003)).

As to the statute's plain language, we find *Winston v. Winston*, 449 S.W.3d 1 (Mo.App. 2014), instructive. There, the court considered whether beneficiaries had violated a no-contest clause by filing a counterpetition and requesting affirmative relief in the form of removal of the trustee; removal of the trustee's power of consent; reformation, modification, or termination of the trust; and severing the trust into three separate trusts for each beneficiary. *Id.* at 7. In concluding the beneficiaries' actions did not trigger the no-contest clause, the court stated:

> Here, neither the trust instrument nor the Missouri Uniform Trust Code, RSMo Chapter 456, defines "contest" nor "validity," thus we employ the ordinary meaning of these terms in analyzing [settlor's] intent in the no contest provision. Black's Law Dictionary provides three definitions of "contest," the second of which is applicable to its use in the 1990 Trusts: "To litigate or call into question; challenge <they want to contest the will>." *Black's Law Dictionary* 361 (9th ed.2009). "Valid," the adjective form of "validity," is defined as "Legally sufficient; binding <a valid contract>." *Black's Law Dictionary* 1690 (9th ed.2009). So, to call into question the legal sufficiency of the [trusts] would result in the revocation of benefits to the contesting beneficiary.
>
> In the instant action, none of the allegations or relief sought in the [beneficiaries'] counterpetition questioned the legal sufficiency of the trusts. Rather, it implicitly acknowledged that the trusts were valid, but alleged circumstances that purportedly warranted some form of modification because those circumstances were not foreseen by the settlor when the trust was validly created, and were presently frustrating the settlor's intent as expressed in the trusts. Particularly, the counterpetition acknowledges the terms it asks the court to modify. It does not call them into question, specifically stating: "Pursuant to the terms of the trusts, [trustee] must approve distributions from any of the trusts to [beneficiaries] made during [trustee's] lifetime."
>
> . . . .

. . . Simply stated, these allegations and the relief sought do not challenge the validity of the trusts at all. Rather, the validity of the trusts is implicitly acknowledged, and the relief sought is based on circumstances outside the trust instruments. As such the [beneficiaries'] action does not trigger the no contest clause.

*Id.* at 7-8.

We find the analysis of "contest" and "validity" in ***Winston*** compelling. We determine that, as in ***Winston***, the reformation of trust due to mistake counter/cross-claim filed by Jan did not amount to a trust contest governed by the two-year limitations period in Section 456.6-604.1(1).[6]

Jeff argues ***Winston*** supports his position in that reformation was sought and allowed because, unlike here, "circumstances were not foreseen by the settlor when the trust was validly created, and were presently frustrating the settlor's intent as expressed in the trusts." *Id.* at 8. Jeff argues Jan does not acknowledge the validity of the Fourth Amendment so this case differs from ***Winston***. We disagree. As in ***Winston***, here the Fourth Amendment was validly created. The parties do not dispute Roger intended to create a trust; however, due to circumstances outside the Fourth Amendment (namely, Roger signing the wrong version of the Fourth Amendment in signing Version 1 instead of Version 2), the Fourth Amendment does not accurately reflect Roger's intent in executing the Fourth Amendment.

---

[6] In ***Winston***, the court noted "[a]nalysis of the meaning of a trust provision, such as the no contest provision of the [trusts], is governed by the primary rule of trust construction: the settlor's intent at the time of the creation of the trust controls and is to be ascertained primarily from the trust instrument as a whole." *Id.* at 7. Thus, to be clear, that Jan denominated her claim as one for "reformation of trust due to mistake" is not determinative as to which statute of limitations governs her claim. Rather, we consider the intent of Roger as settlor, as found by the trial court and not contested by Jeff on appeal, as well as the allegations of Jan's claim and the relief sought in determining that the claim, however denominated, does not challenge the validity of the Fourth Amendment and therefore is not governed by the limitations period in Section 456.6-604.1(1). It is possible that another reformation claim, containing different allegations and/or seeking other relief, could challenge the validity of the trust and therefore could be governed by the limitations period in Section 456.6-604.1(1). "A pleading is judged by its subject and substance of its recitals and not its rubric or caption." ***Devitre v. Orthopedic Ctr. of St. Louis, LLC***, 349 S.W.3d 327, 334 (Mo. banc 2011) (citing ***Worley v. Worley***, 19 S.W.3d 127, 129 (Mo. banc 2000)).

10

The parties discuss another Southern District decision, ***Morris v. Trust Co. of the Ozarks***, 423 S.W.3d 918, 919 (Mo.App. 2014), where the court found a personal representative's claim that a trust had terminated as a matter of law under the doctrines of merger and passive trust/statute of uses barred by the limitations period in Section 456.6-604.1(1) because "[t]o charge failure, by operation of law, of an existing and otherwise valid trust is to charge that the trust is no longer valid; to do so by lawsuit is to contest the validity of the trust." ***Id.*** Here, Jan did not argue that the Fourth Amendment had terminated as a matter of law and, as discussed above, never asserted the Fourth Amendment was no longer valid; rather, she asserted the Fourth Amendment was valid and would determine who would receive the Bank Stock if the Bank Stock still existed at the time of Jan's death. Jan's argument was that, due to a mistake, a portion of the Fourth Amendment needed to be reformed to reflect Roger's intent in executing the Fourth Amendment. *See also* Uniform Trust Code Section 604 cmt.:

> A trust can be contested on a variety of grounds. For example, the contestant may allege that no trust was created due to lack of intent to create a trust or lack of capacity (*see* Section 402), that undue influence, duress, or fraud was involved in the trust's creation (*see* Section 406), or that the trust had been revoked or modified (*see* Section 602). A "contest" is an action to invalidate all or part of the terms of the trust or of property transfers to the trustee. An action against a beneficiary or other person for intentional interference with an inheritance or gift, not being a contest, is not subject to this section.

We note Section 604 does not set out reformation due to mistake as an example of a trust contest.

Jeff relies on several cases from other jurisdictions.[7] In particular, Jeff asserts ***In re Gerald L. Pollack***, 867 N.W.2d 884 (Mich. Ct. App. 2015), is on all-fours with this case. There, beneficiary children filed petitions to set aside the trust and to set aside the will, to modify or

---

[7] "While cases from other jurisdictions can provide useful and insightful guidance, they are not conclusive or binding precedent." ***State v. McIntosh***, 540 S.W.3d 418, 425 n.5 (Mo. App. 2018) (internal citation and quotations omitted).

reform the trust, and to remove the co-trustee. *Id.* at 889. The court affirmed the trial court's grant of summary judgment against the children, finding the action to set aside the trust was barred by the two-year statute of limitations in the Michigan Trust Code for contesting the validity of a trust, that the attorney who drafted the will did not unduly influence the testator, and that there was no evidence to support a claim of mistake in the will. *Id.* As to its conclusion that the petition to modify or reform the trust amounted to a judicial proceeding to contest the validity of the trust, the court stated:

> Although phrased in terms of modification or reformation, the request for relief effectively sought a wholesale rewriting of the Trust to change its essential provisions concerning distribution of assets and the successor cotrustee. This relief was sought, in part, on the basis of the petition's allegation that the Trust was invalid as it was a product of [the settlor's] mistake of fact when he executed the document. The petition did not seek merely to correct a drafting error or to take account of a change of circumstances that occurred after the Trust was executed. Instead, the petition sought to change the most material provisions on the ground that [the settlor's] execution of the document was induced by a mistake of fact; this same underlying theory was asserted in [the children's] petition to set aside the Trust, which was dismissed under the statute of limitations. Overall, the true gravamen of the action is that it contests the validity of the Trust. Therefore, the period of limitations in MCL 700.7604(1) is applicable.

*Pollack*, 867 N.W.2d at 903-04.

*Pollack* is distinguishable from the present case in several respects. The settlor's children also filed an action to set aside the trust, which was rejected, and which the court noted contained the "same facts" as used in their petition for reformation. *Id.* Further, the court noted the reformation petition "did not seek merely to correct a drafting error[.]" *Id.* In contrast, Jan's reformation claim sought to correct a drafting error, the mistaken signing of Version 1 instead of Version 2, and Jeff does not dispute on appeal that Jan proved the existence of the mistake and the need for reformation by clear and convincing evidence, as required by Section 456.4-415.

12

Thus, the trial court did not err in concluding that the gravamen of Jan's reformation claim was not a proceeding to contest a trust governed by the limitations period in Section 456.6-604(1).

Jeff also cites *Ackerman v. Genevieve Ackerman Family Trust*, 908 A.2d 1200, 1204 (D.C. 2006), where the court affirmed the trial court's conclusion that a party's unsuccessful action to reform a trust triggered the trust's no-contest clause. *Ackerman* is not persuasive authority in our resolution of the issues here because it involves another state's laws and did not involve consideration of any Uniform Trust Code provision, including the provisions at issue here.

For the reasons stated above, we do not find the cases from other jurisdictions persuasive, given the analysis in *Winston* and the plain language of the relevant statutes. Point I is denied.

## Point II

In Point II, Jeff asserts that "the trial court erred in reforming [the] Trust because the doctrine of laches barred Jan's reformation claim[.]"

### Standard of Review

We review a trial court's decision regarding laches for an abuse of discretion. *Bergan v. Mills*, 988 S.W.2d 84, 88 n.3 (Mo.App. 1999) (citing *Mississippi-Fox Drainage Dist. #2 of Clark Cnty. v. Plenge*, 735 S.W.2d 748, 754 (Mo.App. 1987)). A trial court abuses its discretion if its ruling "is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Robinson v. Langenbach*, 599 S.W.3d 167, 180 (Mo. banc 2020) (quoting *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 87 (Mo. banc 2010)).

13

"[E]quity may not disregard a statutory provision, for where the legislature has enacted a statute that governs and determines rights of the parties under certain circumstances, equity, as much as the law, is bound thereby." ***Janes v. Janes***, 242 S.W.3d 744, 749 (Mo.App. 2007) (quoting ***Lane v. Non-Teacher Sch. Emp. Ret. Sys. of Mo.***, 174 S.W.3d 626, 640 (Mo.App. 2005)). "Therefore, 'as a general rule the doctrine of laches will not bar a suit before the expiration of the period set forth in the applicable statute of limitations in the absence of special facts demanding extraordinary relief.'" ***Id.*** (quoting ***State ex rel. Gen. Elec. Co. v. Gaertner***, 666 S.W.2d 764, 767 (Mo. banc 1984)).

Because Jan's counterclaim for reformation of trust due to mistake under Section 456.4-415 is governed by the ten-year statute of limitations in Section 516.110(3), and Jan filed her claim long before the expiration of the ten-year statute of limitations, Jeff must show "special facts demanding extraordinary relief." ***Id.*** Jeff's vague and speculative assertion that he lost the opportunity to contest the Fourth Amendment falls short of special facts demanding extraordinary relief. Jeff fails to articulate what challenge or contest he could not bring due to Jan's delay in telling him about the mistake in the Fourth Amendment. Point II is denied.[8]

---

[8] The trial court found Jeff had not proven prejudice to support a laches claim, a finding Jeff did not appeal. "The invocation of laches requires that a party with the knowledge of facts giving rise to its rights unreasonably delays asserting them for an excessive period of time and the other party suffers legal detriment therefrom." ***Glickert v. Loop Trolley Transp. Dev. Dist.***, 542 S.W.3d 383, 388 (Mo.App. 2017) (quoting ***Nahn v. Soffer***, 824 S.W.2d 442, 444-45 (Mo.App. 1991)). "In determining whether the doctrine of laches applies in a particular case, an examination is made of 'the length of delay, the reasons therefor, how the delay affected the other party, and the overall fairness in permitting the assertion of the claim.'" ***Id.*** (quoting ***Nahn***, 824 S.W.2d at 445). "The prejudice and disadvantage which supports laches is generally of two kinds: (1) the loss of evidence which would support the Respondents' position and (2) a change in position in a way that would not have occurred but for the delay." ***Id.*** (quoting ***Port Perry Mktg. Corp. v. Jenneman***, 982 S.W.2d 789, 792 (Mo.App. 1998)). The trial court found:

> Jeff is in the exact same position now that he would have been had Jan discovered the mistake in 2016. This is not a situation where the Bank Stock was already distributed to Jeff and the reformation would rescind that distribution. Here, Jan is still alive, and the Bank Stock will not be distributed until her death, *and only if that stock still exists*. Further, given the complexity of Roger's estate plan, the shock of his unanticipated passing and Jan's reliance on lawyers and

## **Conclusion**

The judgment of the trial court is affirmed.

GINGER K. GOOCH, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS

---

other professionals, it is not unreasonable that Jan did not immediately discover the mistake.

Jeff does not challenge these factual findings. The trial court did not erroneously declare or apply the law concerning laches and did not otherwise abuse its discretion in finding Jan's claim not barred by laches.